UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LEE DUPAGE,

           Plaintiff,                CIVIL ACTION NO. 10-10868

          v.                      DISTRICT JUDGE MARK A. GOLDSMITH

MARK A. HACKEL, ET. AL.,         MAGISTRATE JUDGE MARK A. RANDON

           Defendants,

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT
CORRECTIONAL MEDICAL SERVICES, INC.'S MOTION FOR
SUMMARY JUDGMENT (DKT. NO. 25) AND TO GRANT
DEFENDANT OFFICER ASH'S MOTION TO DISMISS  (DKT. NO. 29)**

## I.  INTRODUCTION

Plaintiff Robert Lee Dupage ("Plaintiff"), a former inmate in the Macomb County Jail ("MCJ"), brought this 42 U.S.C. § 1983 civil rights action alleging violations of his Eighth Amendment rights (Dkt. No. 1).  Proceeding *pro se*, Plaintiff filed suit against Defendants Mark A. Hackel (Macomb County Sheriff), John/Jane Doe, Officer Ash, and Correctional Medical Services, Inc. ("CMS").  Plaintiff alleges that MCJ Officers overloaded an elevator, on which he was a passenger, causing it to become stuck between floors.  Plaintiff claims his arm was injured when officers removed him from the elevator, and that CMS failed to attend to his injury. Before this Court are two motions: the motion to dismiss of Defendant Ash (Dkt. No. 29) and the motion for summary judgment of Defendant CMS (Dkt. No. 25).  Plaintiff failed to file responses to these motions, despite being ordered to do so by the Court (Dkt. No. 30). Furthermore, all recent mail sent to Plaintiff has been returned "undeliverable" (Dkt. Nos. 31-32,

34).  For the reasons set forth below, **IT IS RECOMMENDED** that Defendant Ash's motion to dismiss/motion for summary judgment and Defendant CMS's motion for summary judgment both be **GRANTED**.

## II.  <u>FACTS</u>

According to his Complaint, Plaintiff was injured by MCJ staff/officers when he was "snatched up unexpectedly only by his left hand" from an elevator stuck between two floors, causing severe pain and noticeable disfigurement of his left arm and limited movement of his left shoulder (Dkt. No. 1, pp. 8-9).  Plaintiff alleges that Defendant Ash along with another unidentified officer[1] acted unprofessionally by not complying with MCJ rules and procedures. In particular, Plaintiff claims that although the elevator has a sign that provides a 3500 pound maximum weight capacity and 16 person limit,"[2] Defendant Ash "loaded 23 prisoners into the elevator," which became overcrowded (*id.* at p. 7).  Plaintiff alleges that after being pulled from the elevator, Defendant Ash "went even further to humiliate and taunt him because he complained of "sever" (sic) pain in his left arm (*id*. at p. 9).

According to Defendant Ash and other officers, during the transport, the elevator did stop between the first and second floor, but the elevator was only three feet from the second floor (Dkt. No. 29; Ex. D ¶3, Ex. E, Affidavit of Corrections Deputy Oliver, ¶3 and Ex. F, Affidavit of Corrections Deputy Peck-Gagne, ¶3).  Officers Oliver and Peck-Gagne arrived to assist in the removal of the inmates.  Oliver opened the doors with a key, and the two officers worked from

---

[1]  According to Defendants, the "unidentified" officer is either Officer Oliver or Officer Peck-Gagne.

[2]  Photos of the sign in the elevator are included in Defendant Ash's motion.  The sign does *not* display a 16 person limit. *See* Dkt. No. 29, Ex. C.

their position on the second floor while Defendant Ash remained in the elevator (Dkt. No. 29, Ex. E ¶4).

The inmates were removed, one at a time, with Oliver grabbing one arm while Peck-Gagne grabbing the other arm; they pulled each inmate out while Defendant Ash assisted by pushing the inmates up from inside the elevator (Dkt. No. 29; Exs. D ¶¶4, 5; E ¶5; and F ¶4). Although Plaintiff's Complaint suggests that an unidentified person "snatched [him] up" by only his left hand causing his injury, all three officers specifically deny this allegation (Dkt. No. 29; Exs. D ¶8 ; E ¶8; and F ¶8). After the successful removal of all the inmates, Peck-Gagne specifically recalls asking multiple times whether any inmate was injured and/or wanted medical assistance (Dkt. No. 29; Ex. F ¶6). But, not one inmate complained of injury or requested medical assistance (Dkt. No. 29; Exs. D ¶9, E ¶7; and F ¶¶ 5, 6, 9).

As to Defendant CMS, Plaintiff alleges that "after repeated requests for medical services…[an agent or employee of Defendant] CMS said, 'if inmate is not bleeding to death or dying, then it is not an emergency'"(Dkt. No. 1, p. 10). Thus, Plaintiff alleges that Defendant CMS wrongfully refused to treat him after he was injured as a result of being removed from the stuck elevator. Plaintiff claims that the response by Defendant CMS to his complaints of pain was "typical" (*Id*.).

### III.  STANDARDS OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court recently provided in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1940 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true.  *Id.* at 556; *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).  This presumption, however, is not applicable to legal conclusions.  *See Iqbal*, 129 S.Ct. at 1949.  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964–65).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).  On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in a light most favorable to the non-moving party.  *See*

-4-

*Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has an initial burden of demonstrating an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325. If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita,* 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could be reasonably find for the plaintiff.").

## IV.  ANALYSIS

As noted earlier, Plaintiff failed to file responses to Defendants Ash and CMS's dispositive motions, despite being ordered to do so by the Court.[3]  Thus, these motions are unopposed.  "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically."  *Sobczak v. Daniel Spitters, P.A.*, No. 1:09-cv-57, 2011 U.S. Dist. Lexis 19884, at *7(W.D. Mich., Feb. 3, 2011) (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996)).  However, "when a motion for summary

---

[3] Recent mailings to Plaintiff have all been returned as "undeliverable" (Dkt. Nos. 31-32, 34).  It is Plaintiff's responsibility to update the Court with current addresses.  *See Evans v. Metrish* Case No. 06-13660, 2008 WL 3200002 (E.D. Mich., Aug. 06, 2008); *see also* E.D. Mich. LR 11.2 ("…[E]very party not represented by an attorney must include his or her contact information consisting of his or her address, email address, and telephone number on the first paper and serve notice with the new contact information.  The failure to file promptly current contact information may subject that person or party to appropriate sanctions, which may include dismissal, default judgment and costs".).  The Court has no way of knowing litigant's mailing address except by checking the address provided by the litigant and reflected on the docket.  Any problems arising from a failure of service in this case is directly attributable to Plaintiff's failure to update the docket and provide the Court with his current contact information, in violation of E.D. Mich. LR 11.2.

judgment is unopposed, '[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record.'" *Id.* 7-8 (quoting *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992)).

"To state a claim under §1983, a plaintiff must set forth facts that, when construed favorably, establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under color of state law." *Harris v. Circleville*, 583 F.3d 356, 364 (6th Cir. 2009) (citing *Dominguez v. Corr. Med. Serv.*, 555 F.3d 543, 549 (6th Cir. 2009)).

### A. Eighth Amendment

The Eighth Amendment provides "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. CONST. Amend. VIII.  In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense.  In its application by the courts, the Amendment actually protects a wide assortment of interests.  It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-367 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion).

The Constitution "does not mandate comfortable prisons."  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The Eighth Amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials

must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of inmates.'" *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)).  If the offending conduct is not a criminal penalty, then it must reflect an "unnecessary and wanton infliction of pain" to come within the Eighth Amendment prohibition on cruel and unusual punishment.  *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  Such claims must satisfy both an objective and subjective test.  *See also Farmer v. Brennan*, 511 U.S. 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991).  Under this analysis, what constitutes unnecessary and wanton infliction of pain will vary depending on the nature of the alleged constitutional violation.  *See Hudson v. McMillain*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *See Hudson* v. *McMillain,* 503 U.S. 1; *Rhodes v. Chapman*, 452 U.S. 337. To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.  The objective component is contextually driven and is responsive to "contemporary standards of decency." *McMillain*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).

On the other hand, the subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton."  *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993).  In determining whether an official acted wantonly, the court applies a deliberate indifference standard.  *Id*. at 302-303; *See Estelle*, 429 U.S. at 104-106.  Under the "deliberate indifference" standard, a "prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to

-7-

take reasonable measures to abate it. *Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious danger to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate. *See id*. at 843-844. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. See *id*. at 844-845. In short, "[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor,* 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing Farmer, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)(en banc)).

The Eighth Amendment also obligates prison authorities to provide medical care to incarcerated individuals, as failure to provide such care would be inconsistent with contemporary standards of decency. *See Estee v. Gamble*, 429 U.S. 102, 103-104 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id*. at 104-105; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for deprivation of adequate medical care also has an objective and subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834. To satisfy the objective component, Plaintiff must allege that the medical need at issue is sufficiently serious. *Id*. at 834. In other words, the inmate must show that he is incarcerated under conditions posing substantial risk of serious harm. *Id*. The objective component of the adequate medical care test is satisfied [where] the seriousness of a prisoner's need [ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F. 3d 890, 899 (6th Cir. 2004). If, however, the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, the inmate must "place verifying medical evidence in the record to establish the

-8-

detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component, on the other hand, requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825 at 834). Deliberate indifference entails something more than mere negligence, *Farmer*, 511 U.S. at 835, but can be "satisfied by something less that acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835. Under *Farmer*, the official must be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and he must also draw the inference." *Id*. at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment, however. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *See Sanderfer v. Nichols*, 62 F.3d 151, 154-55

-9-

(6th Cir. 1995).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *See id*.

**B.  Defendant Ash**

In his Complaint, Plaintiff alleges that Defendant Ash disregarded policy and procedures by loading too many inmates in the elevator, which stalled between floors, thus requiring MCJ officers to lift prisoners out (Dkt. No. 1).  These actions allegedly caused harm to Plaintiff.  *Id*.  Plaintiff claims the elevator in question had a 3500 pound weight capacity, yet was loaded with 23 prisoners, 7 more than the purported limit of 16.

However, Plaintiff failed to specifically allege or demonstrate that Defendant Ash knew of the danger or specific risk of harm to him.  Plaintiff alleges that the Officers "snatched" him by his left hand out of the elevator, which caused "sever" (sic) pain and damage to his left arm and shoulder (Dkt. No. 1, p. 8).  Plaintiff failed to show that Defendant Ash was aware of risk of harm that the elevator would get stuck.  Also, Plaintiff failed to demonstrate that Defendant Ash could draw an inference that a substantial risk of harm existed for Plaintiff.  Plaintiff's pleaded facts simply do not permit a reasonable inference that Defendant Ash acted wantonly in removing him from the elevator.

Furthermore, according to the affidavits of Defendant Ash and Corrections Deputies Oliver and Peck-Gagne, all inmates were removed from the elevator without injury or even complaint of injury (Dkt. No. 29; Exs. D ¶¶ 6, 7, 9; E ¶¶ 6, 7; and F ¶5, 7, 9).  Plaintiff failed to respond to Defendant Ash's dispositive motion and failed to rebut the affidavits attached thereto.  Moreover, the attached affidavit of Corrections Deputy Peck-Gagne indicates that she asked inmates multiple times whether they wanted or needed medical attention after exiting the stuck elevator, and all inmates declined treatment (Dkt. No. 29; Ex. B ¶6).  This fact is further

supported by the records of Defendant CMS, the healthcare provider for MCJ.  In its motion for summary judgment, Defendant CMS has attached the Plaintiff's medical records, which reflect a total absence of complaints or requests for medical treatment from Plaintiff on the day in question (Dkt. No. 25; Ex. B, filed under seal).

In sum, Plaintiff failed to state a claim against Defendant Ash.  Furthermore, Plaintiff has failed to rebut the arguments and facts presented in Defendant Ash's motion for summary judgment.  As such, Defendant Ash's motion to dismiss/motion for summary judgment should be granted and Plaintiff's claims against Defendant Ash should be dismissed.

### C. Defendant CMS

Plaintiff contends that CMS violated his Eighth Amendment right by being deliberately indifferent to his medical needs (Dkt. No. 1).  Plaintiff alleges in general terms that he requested medical attention while in custody at the MCJ, but that Defendant CMS denied him such care (Dkt. No. 1, pp. 9-10).  However, the records of Defendant CMS belie that statement (Dkt. No. 25, Ex. B, filed under seal).  Rather, the medical records show that Plaintiff had only one contact with health care prior to November 6, 2009 (*id.*).  That encounter was a chronic disease clinic visit for his hypertension (*id.*).  Plaintiff was re-incarcerated at the facility in November 2009.  On November 6, 2009, Plaintiff completed a medical screening form and reported no medical problems (*id*. at 78).  A jail health assessment was done on November 10, 2009 and was found to be normal (*id*. at 66).  However, the following day, Plaintiff submitted a medical request complaining of back, left leg and left arm pain – he was seen the same day and prescribed Motrin (*id.* at 63).  After again complaining of pain, his Motrin dosage was increased to 600 mg, on November 27, 2009 (*id.* at 26, 51).  Plaintiff had no complaints about his arm again until February 14, 2010, when he submitted another health request complaining that the pain in his

arm was more severe (*id.* at 48).  As a result of his request he was placed in sick call and seen on

February 18, 2010.  After discussing side effects and long term consequences of non-steroidal

anti-inflammatory use, the medical provider again ordered 600 mg of Motrin for Plaintiff's pain

(*id.* at 35, 16).

On March 4, 2010, Plaintiff filed this action.  Perhaps not coincidentally, his complaints

related to his arm then became more frequent.  Plaintiff again kited health services on April 5,

2010, and again Dr. Bedia continued his Motrin (*id.* at 59).  Plaintiff's complaints culminated

with his being seen by the doctor in the health clinic on June 17, 2010.  The physician's

examination revealed that he had a supinated biceps tendon but that he had full range of motion

in the left upper extremity at both the shoulder and elbow.  Plaintiff had no motor deficits in any

direction including supination and pronation.  As such, he was diagnosed with an old biceps

injury with full range of motion.  His medications were continued until September 12, 2010 (*id.*

at 71).  Plaintiff was released from custody in September 2010.

Plaintiff appears to allege that the medical providers should have done something else for

his complaints of shoulder pain (Dkt. No. 1, pp. 9-10).  However, courts across the country in

applying *Estelle, supra*, have repeatedly rejected inmate claims when the basis for the claim is a

dispute over the need for a treatment, such as surgery.  Even when viewed in a light most

favorable to Plaintiff, his allegations as to Defendant CMS simply do not rise to the level of a

constitutional violation.  Defendant CMS attached Plaintiff's medical records to its motion for

summary judgment.  These records show that Plaintiff was seen by the clinic each time Plaintiff

put in a request (Dkt. No. 25; Ex. B).  Plaintiff's shoulder was examined and found to have

normal range of motion and Plaintiff was given medication for pain control and to reduce

inflammation.  *Id.*  In short, Plaintiff has failed to establish that there is a genuine issue of material fact for trial.  Defendant CMS's motion for summary judgment should be granted.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, **IT IS RECOMMENDED** that Defendant Ash's motion to dismiss/motion for summary judgment and Defendant CMS's motion for summary judgment both be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  July 15, 2011

<u>Certificate of Service</u>

     *I hereby certify that a copy of the foregoing document was served on the parties of record on this date, July 15, 2011, by electronic and/or first class U.S. mail.*

                       <u>s/Melody R. Miles</u>
                       *Case Manager to Magistrate Judge Mark A. Randon*